UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID BATTAGLIA,

      Plaintiff,

  v.

QUICKEN LOANS, INC.,

      Defendant.

18-CV-1104
DECISION AND ORDER

The plaintiff, David Battaglia, brings this action against the defendant, Quicken Loans, Inc. ("Quicken Loans"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). On December 28, 2018, Quicken Loans moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Docket Item 10. Battaglia responded on January 16, 2018, Docket Item 12, and Quicken Loans replied on February 1, 2019.

For the reasons below, the defendant's motion to dismiss for failure to state a claim is DENIED.

## **FACTUAL BACKGROUND**

On a motion to dismiss, courts assume that the allegations in the complaint are true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Doe v. Hagenbeck*, 870 F.3d 36, 42 (2d Cir. 2017). The facts alleged in Battaglia's amended complaint tell the following story.

In February 2018, Quicken Loans called and texted Battaglia on his cell phone multiple times each week and often multiple times each day. Docket Item 9 at 2. The

caller often was trying to get in touch with a person named "Katie" regarding Quicken Loans. *Id.* Battaglia does not know anyone named "Katie." *Id.* Battaglia never authorized Quicken Loans to call his cell phone. *Id.*

During one telephone conversation with a male agent of Quicken Loans in February 2018, Battaglia told the agent that his company was "contacting the wrong person and [that Battaglia] was not interested in their services." *Id.* at 3. Battaglia told Quicken Loans "to stop calling him on his cellular telephone." *Id.* The agent "apologized for calling [Battaglia] and stated that [Quicken Loans] would remove [his] number from their system and that [he] would not receive any further calls." *Id.* During the same month, Battaglia received a voicemail from Quicken Loans with an automated message. *Id.* The message asked the listener to "press #1" if he "wanted to speak with a representative." *Id.*

These telephone calls were "made using an automatic dialing system as defined by the [Telephone Consumer Protection Act] and/or transmitted prerecorded voice messages and/or transmitted messages using an artificial voice." *Id.*

In March 2018, Battaglia received a text message from Quicken Loans. *Id.* The text message said "Quicken Loans: Find the Mortgage that works for you right on your phones. Start online." *Id.*

During February and March, Quicken Loans initiated at least twenty-eight phone calls to Battaglia, despite his request that Quicken Loans stop calling him. *Id.* The calls came from two phone numbers identified with Quicken Loans. *Id.*

Battaglia was unable to receive other incoming calls or otherwise use his cell phone while Quicken Loans was calling him. *Id.* The unwanted calls and texts from Quicken Loans caused Battaglia to become "annoyed and upset." *Id.*

## DISCUSSION

### I. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Testa v. Becker*, 910 F.3d 677, 682 (2d Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

### II. TCPA CLAIMS

#### A. Statutory Context

"Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 370-71 (2012). "'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.'" *Id.* at 372 (quoting TCPA 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). "The Act bans certain practices invasive of privacy and directs the Federal Communications Commission . . . to prescribe implementing regulations." *Id.* at 371. As relevant here, "the TCPA . . . makes it unlawful to use an

automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any . . . cellular telephone, or other service for which the receiver is charged for the calls." *Id.* at 373 (citing 47 U.S.C. § 227(b)(1)(A)).

"The statute defines an 'automatic dialing system' (ATDS, or autodialer) as 'equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 693 (D.C. Cir. 2018).

"Since the TCPA's enactment, the FCC has issued a series of rulemakings and declaratory rulings addressing the Act's reach." *Id.* "In 2003, for instance, the agency concluded that the statute's restrictions on 'making any call' using an ATDS encompass the sending of text messages." *Id.* (citing In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14,014, 14,115 ¶ 165 (2003)).

### B.     Battaglia's Claim

Battaglia has stated a claim under the TCPA. The amended complaint alleges that Quicken Loans made calls to his cell phone without his consent using an automatic dialing system. Docket Item 9. He backs that up with factual allegations sufficient to make his claim plausible, including details of a voicemail left using an automated message, specific mention of an unwanted text message, and an allegation that Battaglia received at least twenty-eight phone calls from two different phone numbers primarily associated with Quicken Loans.

According to Quicken Loans, Battaglia's amended complaint is implausible because it does not provide details about the technology that Quicken Loans used to call Battaglia other than to "regurgitate" the statutory elements regarding the use of a ATDS technology or use of a prerecorded voice. Docket Item 10-1 at 7. At least one court has found it unreasonable to hold plaintiffs accountable for detailing defendants' calling technology at the pleading stage: "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail." *Torres v. National Enterprise Systems, Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. 2012). Holding plaintiffs to such a standard would make callers "virtually immune to TCPA claims, which clearly is not what was intended by Congress is creating the TCPA." *Id.*

But even among courts requiring more substantial factual allegations to successfully plead a TCPA claim, "the use of an ATDS can be plausibly inferred from allegations regarding, for example, 'the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, or the generic content of the message he received." *Baranski v. NCO Financial Systems, Inc.*, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2104) (quoting *Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)). Here, Battaglia specifically alleges receiving a voicemail "with an automated message stating to press #1 if he wanted to speak with a representative," as well as a text message with generic content: "Quicken Loans: Find the Mortgage that works for you right on your

phones.  Start online."[1]  Docket Item 9.  *See Rotberg v. Jos. A. Bank Clothiers, Inc.*, 2018 WL 5787480, at *7 (S.D.N.Y. Nov. 5, 2018) (finding "the sending of generic text messages" to be "indicative of Defendants' use of an automated calling platform"). Therefore, Battaglia's amended complaint includes sufficient factual content to allow this Court to draw a reasonable inference that Quicken Loans is liable for violating the TCPA, and he has stated a facially plausible claim.

## **CONCLUSION**

For the foregoing reasons, Quicken Loans's motion to dismiss for failure to state a claim, Docket Item 10, is DENIED.

SO ORDERED.

Dated:	February 4, 2019
	Buffalo, New York


	*s/ Lawrence J. Vilardo*
	LAWRENCE J. VILARDO
	UNITED STATES DISTRICT JUDGE

---

[1] The defendant also argues that because the complaint alleges that Quicken Loans called Battaglia looking for a person named "Katie," it could not have been that "any of the calls were placed randomly or sequentially."  Docket item 10-1 at 8.  *See Trumper v. GE Capital Retail Bank*, 79 F. Supp.3d 511, 512 (D.N.J. 2014) (complaint failed to allege that calls were placed using ATDS where calls were apparently directed at a third party).  But even if calls to some specific third-party defeat any reasonable inference that the caller used ATDS random-dialing technology, the complaint alleges unauthorized calls using ATDS *or* an artificial or prerecorded voice.  Docket Item 9 at 4. And the statute "restricts—as separate categories—calls made to cell phones without prior consent using *either* 'any [ATDS] *or* an artificial or prerecorded voice.'" *King v. Time Warner Cable, Inc.*, 894 F.3d 473, 480 (2d Cir. 2018) (quoting 47 U.S.C. § 227(b)(1)(A)) (emphasis in original).  Unlike *Trumper*, where the plaintiff provided "no factual allegations suggesting that the voice on the other end of the line was prerecorded," 79 F. Supp.3d at 512, Battaglia's complaint alleges that he received at least one voicemail from Quicken Loans containing a prerecorded voice as well as a generic text message.

6